JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DAVID HATCHIGIAN & JOHN DOE PROPOSED CLASS

**(b)** County of Residence of First Listed Plaintiff  DELAWARE
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

DAVID HATCHIGIAN PRO-SE

## DEFENDANTS

PECO & MUNICIPAL INSPECTION

County of Residence of First Listed Defendant  PHILADELPHIA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

REC'D MAY 1 6

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question
  *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [x] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | | [ ] 485 Telephone Consumer Protection Act |
| [x] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 720 Labor/Management Relations | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1  Original Proceeding
- [x] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
1983 MALICIOUS PROSECUTION

Brief description of cause:
DEPRIVING PL RIGHT TO ELECTRIC

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $  75K PER PL.

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE
MAY 16, 2022

SIGNATURE OF ATTORNEY OF RECORD
*David Hatchigian*

## FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| David Hatchigian, Joan Randazzo,<br>Bridjette Cannady, Mario Rullo,<br>Jacyln Mahoney, Joseph J. Branconi,<br>Michele D. Mahoney, Tyrone Zachary,<br>Letica S. Marks, John Gardener,<br>Timmy Smith, Larry Velente,<br>Chris Grogan, Gabriel R. Saffioti,<br>Robert H. Levy, Carolyn Boxmeyer,<br>John J. Flannery, Oliver Young,<br>John Does 1-20, Individually<br>And All Those Similarly Situated,<br><br>                    **Plaintiffs**<br><br>**V.**<br><br>**PUC, PECO/EXELON ENERGY<br>COMPANY, EXELON CORP-<br>ORATION and MUNICIPAL<br>INSPECTION CORPORATION<br>Unidentified DOE DEFENDANTS<br>and THE CITY OF PHILADEL<br>PHIA,**<br><br>                    **Defendants** | **CLASS ACTION<br>COMPLAINT**<br><br><br>**JURY DEMAND** |

-------------------------------------------------------------------------------

## I.    PRELIMINARY STATEMENT

1.  This is a class action under 42 U.S.C. § 1983 brought by owners of residential and commercial rental property in Philadelphia for damages and to enjoin the City of Philadelphia's policy and practice of

1

shutting off service without notice to owners and mandating recertification of existing residential electrical infrastructure in violation of the United States Constitution's guarantee of procedural due process. The matter in controversy herein exceeds, exclusive of interest and costs, the sum of Fifty Thousand Dollars ($50,000.00).  Owner David Hatchigian, and each putative Class Member individually named, plead an amount in controversy surpassing $50,000. Jurisdiction is based on diversity of citizenship, with a venue proper in the Eastern District of Pennsylvania in this action by virtue of the premises and lease agreements involved being located in the City of Philadelphia [28 USC 1391]

2.  For years, the City of Philadelphia and Defendant PUC instead enforced Defendant PECO's recertification requirement out of deference to Defendant PECO's underwriting policies, doing so as if PECO was a public utility, an arm of municipal government and/or itself an administrative agency, not primarily driven by profit, thereby imposing the burdens related to certification upon the Class.

3.  The PECO-required certification was at no point adequately or empirically correlated to the electrical safety of the Class Members' premises.

4.  Defendant PECO uses third-party underwriting firms as its conduit for its unfettered commercially unreasonable and ultimately unconstitutional practices, behind the cloak of a "per se reasonable" tariff which PECO knows the Defendant Commission will ultimately rubberstamp in most cases.

5.  Owner Hatchigian started pursuing his "administrative" remedies as to private company PECO's intermittent electrification of his 2-story multi-family house on Brentwood Road, which contained two separate living units, in 2016.   As He intended to raise a facial  as well as an "as applied" challenge to Section 9.2, alleging that Defendant PUC violated the rights of Plaintiff and the Class Members when abdicating its duty of administrative oversight simply absolving Defendant PECO of its duty to reform its "regulations" to conform to commercial realities and growing evidence that an exemption for single-family residences and duplexes, pursuant to which leaseholders and property owners would be appropriately exempted from re-certifying after shut offs of longer duration (1-12 months), was mandated.    [1]

---

[1] PECO initially denied receiving Hatchigian's paperwork, and it was only after PECO and partner Municipal Inspection were hauled into a courtroom that PECO finally admitted a certification was properly issued to owner Hatchigian for Brentwood Road. [See EX. "C", dated August 6, 2019, P13 (holding that "Hatchigian's UTPCPL claim does not fall within the exclusive jurisdiction of the

6. In owner Hatchigian's case, the PUC identified an ambiguity in

PECO's tariff, requiring the court's resolution:

> In light of the history of litigation concerning Tariff Section 9.2,
> and the positions of the Parties, there is consensus that
> implementation of the tariff provision by PECO implies an
> ambiguity which requires interpretation. See Finding of Fact No.
> 5: "One method by which PECO implements Tariff Section 9.2
> is through a policy of requiring an underwriter's inspection
> certificate to re-energize a service address that was not
> energized for six months or more. ******The use of the word
> "Introduction" in the above section, under a plain language
> analysis, connotes prefatory action.    Whether this action
> means electric service or energization prefatory to the premises
> or prefatory to an account holder of record at a Service Address
> is a question that leads us to find ambiguity sufficient to review
> and interpret the tariff based on its policy objectives, usage and
> customs."]  See also PUC Order, Page 31, Note 13 ("See
> *McCloskey v. Pa. PUC*, 219 A.3d 1216, 1223 (Pa. Cmwlth.
> 2019), Affirmed on other grounds, *McCloskey v. Pa. PUC*, 255
> A.3d 416 (2021) and citations, – for the proposition regarding
> statutory interpretation, holding that a statute is ambiguous
> when there are at least two reasonable interpretations of the
> text. In construing and giving effect to the text, 'we should not
> interpret statutory words in isolation, but must read them with
> reference to the context in which they appear.' Id. We note that

---

PUC, and the trial court erred in dismissing Hatchigian's fourth amended complaint
with prejudice.)(Citing Pettko v. Pa. Am. Water Co. (PAWC), 39 A.3d 473 (Pa.
Cmwlth. 2012)] Defendant PECO attempted to excuse its underwriter (Municipal
Inspection)'s refusal to release customer copies and the underwriter's failure to fax
the certification to PECO in a timely manner by the perverse reasoning that if the
certificate was passed along directly to owner Hatchigian, Hatchigian would do
something to alter the certificate (having just spent days on the phone with
unaccountable agents at PECO trying obtain this very document). Id.,  Ignoring
PECO's admission it was aware of the involved leases, the Superior Court did not
reach on appeal the propriety of PECO's and Municipal Inspection's practices.
[Id.]

a tariff is not a statute but adopt the reasoning for a finding of an ambiguity."

- PUC Order, EX. "A", P29-P30.

7. Pursuant to Article 52, the agency's analysis was to include the seriousness of the conduct so as to warrant a higher penalty (52 Pa. Code § 69.120 l (c)( 1), whether the resulting consequences were serious (52 Pa. Code sec. 69.1201(c)(2)), whether PECO's conduct was intentional or negligent (52 Pa. Code§ 69.120 l(c)(3)), the number of customers affected and the duration of the violation. 52 Pa. Code § 69. 1201 (c)(5), PECO's past compliance (52 Pa. Code § 69.1201(c)(6)) and the penalty to deter future violations. 52 Pa. Code§ 69.120l(c)(8).  Although the above factors are cited several relevant factors are no more than nominally applied. [EX "A", P19-P20]   Defendant sought to defer instead to PECO's internal rulemaking by explicitly declining to review (i) whether PECO made efforts to modify internal policies and procedures to address the alleged conduct at issue and to prevent similar conduct in the future (52 Pa. Code § 69.1201 (c)(4)), or (ii) whether the regulated entity cooperated with Commission's investigation (52 Pa. Code § 69.1201 (c)(7))

8. On information and belief, the neglected facts were summarily deemed "not applicable here" [EX. "B" P20] based on the Commission's overriding goal of deferring to PECO, a for-profit private corporation.

Defendant PUC reflexively ruled on this basis that (i) there were no past Commission decisions in similar situations (52 Pa. Code§ 69.1201 (c)(9)), and (ii) there were no other relevant factors to consider (52 Pa. Code (§ 69.1201 (c)(l0)).

9.  It is believed and therefore averred that ultimately denying and dismissing all issues and claims (with the exception of approving a fine for PECO's notice violation in the case sub judice) was a way for Defendant PUC to completely defer to PECO while appearing not to give free rein to the company to implement its "reasonable per se" tariff as the company saw fit.

10.    This pattern of deferential judicial as well as deferential agency  decision-making  leapfrogs the impact of PECO's § 9.2 on the Class Members.  [See Id., at P23, ¶ 4]    Facilitation of PECO's profit driven, commercially unreasonable practices revealed PUC's results oriented approach to fulfilling its quasi regulatory role, propping up the company's reputation as a paragon of civic-minded corporate ethics.

11.    Instead of conducting oversight of the electrification of the rental properties, Defendant PUC nominally acknowledged that it would not be the customer's fault if there was no customer of record for Floor #1/#2, only to severely limit the scope of its ruling in order to allow PECO to

6

continue to burden the Class Members unfettered by any external

regulatory constraints. [See PUC Order "B", P2 ("Of note are the specific

facts associated with the Service Address due in substantial part to

inaccurate notification to PECO regarding customers of record at the

Service Address and evidence of unauthorized contact or tampering with

utility owned equipment at the Service Address.")  The fact that Defendant

PECO is a nongovernmental for-profit entity seeking a reputation as an

ethical company with the highest safety standards would not mean that

PECO should be protected by the privileges and immunities of a state actor

while escaping the regulations that public utilities are subject to.

      12.     Defendant PUC decided against Hatchigian despite

holding by a preponderance of the evidence "that PECO unreasonably

applied the applicable section of the Company's tariff so as to equate the

absence of a customer of record with the absence of electricity

(energization) to the Service Address.")(See Id.), and fully recognizing that

there was insufficient advance notice of the shut off to owner Hatchigian.

[EX. "B", Initial Decision, P1, charging PECO a total civil penalty of eight

hundred dollars ($800.00) "…as provided for in Section 3301 of the Public

Utility Code, 66 Pa. C.S. § 3301)" and even conceding the fact that PECO's

tariff had the side effect of placing the landlord plaintiff in violation of City Code provisions regarding fire safety (EX. "A" P19).

13.     On Plaintiff's appeal of the above omissions and other issues to the Superior Court, the Superior Court sustained Plaintiffs' previous challenge to PECO's § 9.2, by remanding all issues to the Commission.

14.     The burden to comply with PECO's failure to provide consistent Shut-off Notifications to Occupants/Tenants combined with § 9.2's redundant underwriter recertification requirement has undermined the ability of Class Members to meet their other regulatory and compliance duties and legal obligations to the community; pursuant to Philadelphia Codes and City regulations, the rental units must also be licensed, maintained, and registered, and are subject to inspection by the City; these codes and regulations create specific owner and landlord duties which the Class Members are subject to and provide for sanctions and/or fines that may be levied against owners, landlords and tenants for violations of their provisions and for disciplinary action against them in the form of warnings, non-renewal, suspension, or revocation of the rental license.

15.     Plaintiff Hatchigian has thus alleged in the prior administrative and judicial proceeding actions that PECO has behaved like

a state actor but is not a state actor.  Its enforcement and due process

mechanisms for violations of 9.2 are nonetheless highly burdensome and,

more importantly, do not promulgate the private goal of electrical safety.

The fact that Defendant PECO is a nongovernmental for-profit entity

seeking a reputation as an ethical company with the highest safety

standards would not mean that PECO should be protected by the privileges

and immunities of a state actor while escaping the regulations that public

utilities are subject to.

16.     As alleged herein, the quasi-legislative role assumed by

PECO has now resulted in a denial of the Class Members' procedural and

substance due process rights.

17.     Defendant PUC's adjudication of complaints has de facto

provided no meaningful due process or administrative agency or judicial

oversight or regulation as to PECO's enforcement of unreasonable tariffs,

including Section 9.2.

18.     .     The PUC's fining of PECO in response to Mr.

Hatchigian's complaint is a passing nod to the

unfairness/unreasonableness and/or unconstitutionality of PECO's

recertification and shut off practices.

19.          But while the PUC has properly recognized that it was not the landlord's fault that PECO did not have a working meter on Floor #1/2 @ the service address might be a start, this token acknowledgment failed to settle or fully and finally resolve the private company's ongoing failure to perform a reasonably accurate expert assessment of electrical safety at the Class Member's premises, or even to make an adequate inquiry into whether service could be "safely" restored to service addresses using existing electrical infrastructure after discontinuities of shorter duration.

20.     Instead, Defendant PECO's recertification requirement is purportedly to promote electrical safety, but is imposed on property owners and landlords absent timely shut off notices, the opportunity to be heard or the ability to choose underwriters.   Defendants have systematically overlooked the quasi-legislative impact of PECO's tariff on the Class Members, even though  investigating the requirements of electrical safety via experts would presumably have been at the crux of PECO's claimed goal of securing electrical safety for the consuming public when enacting § 9.2.

21.          The Proposed Class consists of all individuals, including namely customers, landlords, and tenants of Defendants, who

received electrical utility services from Defendants, but whose electrical utility services were terminated without due warning, notice, hearing and/or due process, causing abuse, harms, and economic costs and expenses to Plaintiffs.

22.       It is believed and therefore averred that Defendants have engaged in a past pattern of shutting cases back and forth from the PUC to the court, only to ultimately default to the position that PECO's tariff implementation, like the tariff itself, is "reasonable per se". [EX. "E" ¶¶ 19(j)(4), 29, 50, 62] However contrary to the operative nomenclature, the at-issue services (provided by the third-party underwriters the Class Members are compelled to contract with) were never necessary to achieve electrical safety at the rental properties. The private lease agreements of the Class Members are materially interfered with, and in some cases, the PECO-required certification paperwork had to be chased down by the owner or landlord even after the premises have been verbally certified as electrically sound by the chosen underwriter.

23.       Plaintiff Hatchigian and the Class Members are entitled to a jury trial on the above issues and therefore bring the following legal claims: FIRST CAUSE OF ACTION [§ 1983- Malicious Prosecution]; SECOND CAUSE OF ACTION [§1983 – Abuse of Process]; THIRD

11

CAUSE OF ACTION [§ 1985 Conspiracy to Deny Civil Rights under the Takings Clause]; FOURTH CAUSE OF ACTION [§ 1985 Conspiracy to Deny Due Process]; FIFTH CAUSE OF ACTION [Tortious interference with Leases]; SIXTH CAUSE OF ACTION [Prima Facie Tort]; SEVENTH CAUSE OF ACTION [Violation of the Federal Unfair Trade Practices and Consumer Protection Law (Against Defendant PECO)]; EIGHTH CAUSE OF ACTION [Violation of the Pennsylvania Constitution]; TENTH CAUSE OF ACTION [Breach of Contract] (Against Defendant PECO); ELEVENTH CAUSE OF ACTION [For Declaratory Judgment]; TWELFTH CAUSE OF ACTION [Punitive Damages]; THIRTEENTH CAUSE OF ACTION [Negligence]; FOURTEENTH CAUSE OF ACTION [Attorney's Fees]

## II.   **JURISDICTION AND VENUE**

24.    This Court has original jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This Court has personal jurisdiction over Defendant as it directly engaged in business transactions within the Commonwealth of Pennsylvania, such that it has sufficient minimum contacts with the Commonwealth of Pennsylvania. This Court has both general and subject-matter jurisdiction over the parties and over the subject matter of the causes of action asserted in this Complaint in that Defendant, routinely, continuously, systematically, and substantially,

conducted and continues to conduct business in Philadelphia,

Pennsylvania, giving rise to transactions or occurrences therein. Venue is

proper under 28 U.S.C. §1392(b)(1) and (2) in that all of the events or

omissions giving rise to the claims occurred in this District, and the real

properties ("the premises"; "the rental properties") involved are situated

within this District.

### III.    <u>PARTIES</u>

25.    The Plaintiffs are owners, landlords and tenant occupants

of several rental properties located within the City of Philadelphia who were

billed by Defendant PECO for electrical services and usage and are listed

in EX. E.

26.    The City of Philadelphia is a Pennsylvania municipal

corporation.

27.    The Pennsylvania Public Utility Commission ("PUC"; "the

Commission") was established by the act of March 31, 1937 (P.L.160,

No.43), as an independent administrative commission, and regulates the

many essential utility services that Commonwealth residents and

businesses rely on every day.

28.    Defendant PECO Energy Company ("PECO") is a

subsidiary of the Exelon Corporation ("EXELON") and provider of electric

and natural gas. Defendant is Pennsylvania's largest electric and natural gas utility, headquartered at 2301 Market Street S23-1, Philadelphia Pa. 19103. Serving more than 1.6 million electric and 506,000 natural gas customers in Southeastern Pennsylvania, PECO is in a position to perpetuate its historical status as an ethical corporation with a record of prioritizing electrical safety.

29.    Defendant Municipal Inspection Corporation is a private third-party corporate entity, endorsed by PECO to perform electrical inspections and provider of certifications, with offices located at 248 Geiger Road. Suite I 03, Philadelphia, PA 19116.

30.    Plaintiff David Hatchigian ("Hatchigian") is a real property owner, landlord in the city of Philadelphia and PECO customer.  He resides at 2414 Township line Road. Havertown PA. 19083 owns and leases the premises located at 7512 Brentwood Road Philadelphia, Pa. 19151 (hereinafter "Brentwood Road")

31.    All references to "Plaintiffs", "Class" and "Class members" herein below refer to the owner and landlord Plaintiffs in the proposed Class.

32.    All of the conduct herein alleged to have been committed by Defendants includes acts by those Defendants' agents, servants and

employees who were at all times acting within the course and scope of their employment for and on behalf of Defendants.

## IV.  **CLASS ALLEGATIONS**

33.     Plaintiffs bring this Class Action Complaint on behalf of themselves and all other similarly situated property owners and landlords affected by the Defendants' policies and procedures (the "Class").

34.     The facts stated in the Fourth Amended Complaint are therefore incorporated by reference as if re-pled verbatim herein.

35.     Attached to this Complaint are Plaintiff's EX.'s " C" #1-#78, as follows: EX. A is a copy of PUC Order Opinion and Order, April 14, 2022].

36.     EX. B  is a copy of PUC Order "A" [Initial Decision, dated August 16, 2021]

37.     EX. C is a copy of Superior Court Order dated August 6, 2019, Appeal from the Order Entered December 18, 2017 in the Court of Common Pleas of Philadelphia County, Civil Division at No(s): August 2016 No. 16080065, Judge Strassburger (Pl's Ex's. "C" @ 38-P51)]

38.     Attached to this Complaint is the Fourth Amended Complaint in Hatchigian v. PECO et al., Court of Common Pleas of Philadelphia County, No.: 160800065. [EX." E"].

39.     None of the prior (non-final) adjudications of EX. E collaterally estop the Class from bringing the claims pled below.

## CLAIMS FOR RELIEF
## FIRST CAUSE OF ACTION
## § 1983 [MALICIOUS PROSECUTION]

40.     The above allegations are incorporated by reference.

41.     Defendant PECO commenced tariff enforcement proceedings against Plaintiffs in the absence of probable cause for said enforcement proceedings with actual malice.  The tariff enforcement proceedings were partially terminated in favor of Plaintiff.

42.     It is believed and therefore averred that Defendant PECO commenced a proceeding against Plaintiff under §9.2 by 5-18-206.

43.     At all relevant times, PECO was aware or should have been aware that its customer-of-record database for the subject service address was incomplete and improperly maintained. At all relevant times, PECO was aware or should have been aware that Mr. Hatchigian had leases in effect with tenants that would be negatively affected if PECO failed to timely notice shut offs and/or failed to timely recertify existing electrical infrastructure. By the PUC's April 14, 2022 Opinion and Order, the Commissioners found in Plaintiff's favor respecting the existence of an ambiguity in PECO Electric Tariff 9.2. [PUC Order, EX "A", P29.

44.    Based on the PUC's Opinion and Order, the PUC found that PECO failed to provide timely notice of the shut-off of electrical service to Plaintiff's rental property.

45.    Base on  the PUC's Opinion and Order, the PUC found that even if reasonable, PECO's tariff exposed Plaintiff Hatchigian to civil liability under the fire code of the City of Philadelphia.

46.    From on or about May 18, 2016 to on or about May 3, 2022, Plaintiff and the Class Members had no choice but to continue incurring out of pocket losses to appeal adverse portions of PECO's and the PUC's decision-making due to PECO's continued malicious prosecution of the Class Members.

47.    They were shocked and suffered anxiety, loss of enjoyment of life, loss of sleep, loss of rents and emotional distress for being wrongfully accused of regulatory noncompliance, subjected to civil and criminal liability under the property code and losing his paying tenants.

48.    PECO's malicious prosecution of Plaintiffs has undermined the market value of their property and wrongfully deprived Plaintiffs of the value of their interests in the subject properties.

49.    Accordingly, Plaintiffs seeks to recover legal costs, including the pro se/non-lawyer equivalent of attorney's fees, past and

17

future emotional distress damages, loss of rental income, economic damages and punitive damages.

## SECOND CAUSE OF ACTION
## §1983 [ABUSE OF PROCESS]

50.     The above allegations are incorporated by reference. Defendants initiated and/or conducted an investigation ostensibly in accordance with PECO Electric § 9.2.

51.     The proceedings initiated by Defendants were the appropriate and official means by which Defendants could legitimately enforce tariffs.

52.     The enforcement proceedings were effectuated without probable cause, using false and misleading claims that Plaintiff Hatchigian's premises were somehow electrically unsafe.

53.      Defendant's enforcement proceeding was initiated and pursued despite clear and unequivocal evidence that refuted PECO's false allegations and resulting fines and penalties.

54.     PECO maintained the enforcement proceeding despite the lack of a proper basis, in order to pursue ulterior motives of extortion, intimidation, harassment, and forcible interference with Plaintiffs' leases, the existence of which was known to Defendants. See Page 18, PUC ORDER "A" Initial Decision, dated August 16, 2021, finding "There is no

18

requirement in the Public Utility Code, regulations or Commission Order that PECO notify the owner or landlord prior to shut off under these circumstances."; see Id., P19, finding "There is no credible dispute that the service address apartments were occupied at the time of the shut off. The violation here was of a serious nature in so far as the tenants were without service for 3-5 days. Also, because of lack of electricity, the tenants were without the protection equipment required by the City of Philadelphia, which include a fire alarm and smoke and carbon monoxide detectors. "

55.    Defendant PECO abused every aspect and stage of the tariff enforcement procedures against Plaintiff Hatchigian.

56.    Defendant PUC relied on unsubstantiated facts, disregarding exculpatory information, and issuing results oriented and automatic rulings out of deference to a for-profit company whose conduct was not protected by absolute or qualified immunity.

57.    Defendants acted in concert to systematically defend their actions after the fact, concealing an ulterior purpose of targeting property owners and landlords for the purpose of extortion, intimidation, harassment, and tortious interference with their lease agreements.

58.    Defendants' irregular implementation of regular company and agency processes constituted an abuse of process in that regular

company and agency processes have been utilized for an improper

collateral purpose and maliciously pursued for an ulterior objective

disconnected from their legitimate purpose.

     59.     In doing so, deprived Plaintiffs of their Constitutional Right

of due process of law required by the Pennsylvania Constitution and the

Fifth and Fourteenth Amendments of the Federal Constitution.

     60.     As a proximate result of Defendants' abuse of process,

Plaintiffs and the members of the Class have incurred attorney fees and

expenses, suffered harm to their personal and professional reputation, lost

standing as a landlord in the community, lost rental income, were forced to

re-let their premises, were exposed to criminal and civil liability and subject

to extreme humiliation, ridicule, harassment, physical pain and suffering,

and damages in an amount to be determined at trial.

     61.     Wherefore, Plaintiff demands judgment against

Defendants in excess of Twenty-Five Thousand Dollars ($25,000.00) in

compensatory damages, and in excess of Twenty-Five Thousand Dollars

($25,000.00) in punitive damages, together will all costs and fees have

related with this cause of action.

### THIRD CAUSE OF ACTION
### § 1985 [CONSPIRACY TO DENY CIVIL RIGHTS -TAKINGS CLAUSE]

     62.     The above allegations are incorporated by reference.

63.     This count is a claim under the Fifth Amendment by the owners of more than twenty (20) rental units located within the City of Philadelphia.

64.     Defendants have exceeded their authority by unconstitutionally acting in contravention of Pennsylvania statutory law.

65.     Defendants' discretion to implement electricity tariffs is subject to and limited by the Class Members' civil rights as afforded under the Constitution. Inter alia, the constitutional right of Due Process applies to all property owners within the City of Philadelphia.

66.     Defendants have conspired to effectuate a physical taking of Plaintiffs' property without just compensation, by virtue of lack of notice regarding PECO's shutoffs and PECO's burdensome underwriter recertification requirement, which, even assuming that PECO was a governmental entity, fails to promote any compelling governmental interest in public safety.

67.     Section 9.2 dramatically increases the regulatory compliance burden of Plaintiffs even though PECO is a private for-profit commercial entity.

68.     Applying this tariff as reasonable per se has burdened Plaintiffs' property interests by substantially interfering with tenant

occupants' use and enjoyment the rental properties while destroying the hard-earned value of Plaintiffs' rental properties.

69.    The substantial interference with the use and enjoyment of their rental properties constitutes a physical taking and wrongful appropriation of Plaintiffs' private property for public use by the Defendants. Pursuant to the rights afforded to Plaintiffs under the Fifth Amendment, Plaintiffs are entitled to just compensation for the property taken for public use.

70.    Despite the increasing compliance burden on owners and landlords none of the Defendants have addressed the plight of affected Class members.

71.    As a result, Plaintiffs herein have been required to retain experts and attorneys and bring complaints to the Commission and file suit in Philadelphia Court of Common Pleas.

72.    This has resulted in significant time and expense, and Plaintiffs will be forced to incur additional expenses to procure rightful and just compensation for Defendants' taking.  In owner Hatchigian's case, the taking occurred at the Brentwood Road property, starting from 2016 and continuing to date thereafter. As alleged hereinabove, Defendants wrongfully held the Class Members legally responsible for re-certifying

existing and functionally intact electrical infrastructure while overlooking the duty to reasonably notice Plaintiffs and their tenant occupants of service shutoffs, in some cases causing tenants to be constructively or actively evicted from the leased premises and threatening tenant safety and well-being.

73.    The recertification required of the Class Members, including Hatchigian have put into effect deprivations of property interests sufficient to trigger existing due process protections.

74.    Plaintiffs' title interest in the rental properties is impaired in that any ability of the Class Members to maintain, improve and lease their properties is subject to the whims of Defendant, creating reputational damages in the wake of violations and reducing the ability to re-let the rental properties or enter into new lease agreements, in some instances placing Plaintiffs in direct violation of City Codes and Regulations.

75.    A fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

76.    Punishing property owners and landlords without notice and opportunity to be heard in no way promotes the goal of electrical safety, and has not been shown to serve any other legitimate governmental purpose.   Given that PECO is a nongovernmental for-profit entity, it is

doubly unlikely that Defendants properly warranted PECO's conduct by the stated rationale of promoting public safety.

77.    As the Superior Court has affirmed the PUC's endorsement of PECO's policies, practices and procedures regarding recertification is actually counterproductive to the interest of safety  since the Commission - by not ordering that PECO adequately notify members of shut offs in advance and by permitting PECO to continue forcing member's to fund PECO's underwriter in the absence of any potential electrical hazard - Defendants have knowingly colluded to actually divert the Class Members' finite time and labor resources away from the ongoing property maintenance necessary for the provision of safe residential and commercial spaces.

78.    Defendants have repeatedly failed to act reasonably and expeditiously to avoid interrupting private leases and existing tenancies while the landlord and owner still have some ability to mitigate damages due to un-noticed discontinuities in electrical service. [See, EX "B", P18, noting, in passing, that "*There is no requirement in the Public Utility Code, regulations or Commission Order that PECO notify the owner or landlord prior to shut off under these circumstances.*"] (*italics added*)

79.    Regarding notice times, PECO's treatment of residential as well as commercial landlords and owners continues to be unreasonable in that PECO can easily amend the current tariff by reforming the relevant language to encompass an exemption for residential and commercial properties potentially subject to the recertification requirement.  (See EX. "A", Initial Decision P14 (finding that "Complainant [Hatchigian] has established a prima facie case that PECO misapplied its underwriter certificate policy."); Id., P18, note 6 (noting that "Given that electricity is needed for safety equipment, such as fire alarms and smoke and carbon monoxide detectors, PECO should consider whether a shut off notice should be sent to the owner/landlord when there is a shut off at a service address for which it has no customer of record or when service is shut off to require an underwriter's certificate.")

80.    Discovery will further show that Defendant PECO could easily and inexpensively provide accurate and timely notice of shut offs and that PECO instead gives selective and often late notice in order to skirt potential challenges to its shut offs.  By deferring to PECO's lack of consistent notice policies and delayed provision of approved certifications to Class Members until a point in time where their private leases are disrupted and the Class Members are no longer able to mitigate their costs,

Defendants are actively hindering the Class Members from seeking PUC review of PECO's bad decision making and actively concealing the disclosures based on which legitimate claims against PECO might be asserted, ruled upon and remedied without sanctioning Class Members with Code violations, defaulted leases and lost rents.

81.     For all the reasons stated, Plaintiffs and members of the Class are persons entitled to relief pursuant to 42 U.S.C. § 1983 in that, under color of statute, ordinance, regulation, custom, or usage the defendant has deprived them of rights, secured by the Constitution of the United States; defendant's actions has deprived and threatens to deprive plaintiffs of property without due process of law in violation of the Fourteenth Amendment, to wit, the right of Due Process guaranteed by the 14th Amendment. Conversion or an unconstitutional taking of Plaintiffs' liberty or property interest in their Premises resulted from defendant's actions.

## FOURTH CAUSE OF ACTION
## § 1985 Conspiracy to Deny Due Process – §§ 1985(2) and (3)

82.     The above allegations are incorporated by reference. Defendants PUC, PECO and Municipal Inspectors herein conspired for the

purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in Pennsylvania.

83.     They did so with intent to deny Hatchigian and the Class the equal protection of the laws.

84.     Defendant Municipal Inspectors knowingly enabled Defendant PECO and Defendant PUC to act upon their invidious discriminatory animus against Individual Plaintiff Hatchigian as defined by federal law.

85.     By making Hatchigian the subject of their coordinated efforts to impede, hinder, obstruct and/or defeat Hatchigian's pursuit of rental income and making Hatchigian the subject of section 9.2 sanctions, Defendants' actions were with the specific aim of targeting Hatchigian based on his being a property owner and landlord.

86.     Defendants have acted in concert with each other and conspired to deprive Hatchigian and other members of the proposed Class of the equal protection of the laws, or of equal privileges and immunities under the laws.

87.     In 2016 and following, these Defendants formed a meeting of the minds as to the goal of targeting property owners and landlords, when they discussed targeting and agreed amongst them to

target owners and landlords of rental units within the City of Philadelphia. In so conspiring with each other, Defendants were driven by a class-based invidious discriminatory animus against property owners and landlords.

88.     From 2016 onwards, these Defendants continued to demonstrate their goal of impeding, hindering, obstructing, or defeating the Class's rental of property by conducting themselves as if PECO were a public utility, not a private company, motivated by their class-based invidiously discriminatory animus against property owners and landlords.

89.     Wherefore Plaintiffs seek damages in an amount to be determined at trial on their Fourth Cause of Action.

## FIFTH CAUSE OF ACTION
### Tortious interference with Leases

90.     The above allegations are incorporated by reference.

91.      Binding lease agreements existed between Plaintiffs and Plaintiffs' tenants.

92.     Defendants had knowledge of the existence of these leases with Plaintiffs' tenants.

93.     Defendants intentionally procured Plaintiffs' breach of the terms of these leases without justification, causing Plaintiffs' damages.

94.     Based on Defendants' tortious interference with the leases between Plaintiffs and their tenant, Plaintiff now seeks damages in

the amount of lost rents, direct, incidental and consequential damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### Prima Facie Tort

95.    The above allegations are incorporated by reference as if restated verbatim herein.

96.     Defendants are guilty of intentionally inflicting harm motivated by malice or "disinterested malevolence" with the aim of harming Plaintiff and the members of the Class, without excuse or justification by an act or series of acts which are otherwise legal, resulting in special damages.

97.    Defendants inflicted the harm of loss of rental income, loss of prospective rental income opportunities, mental anguish and emotional distress on Plaintiff and the Class Members by interfering with their tenancies and leaving their rental property in a state of limbo based on false accusations of regulatory noncompliance and without probable cause to believe Plaintiff and the Class Members engaged in the alleged noncompliance, and exposing Plaintiff and the class members to civil and criminal liability.

98.    Defendant PECO then litigated the reasonableness of its tariff before the PUC, costing the Class further legal expenses attempting

to recoup their losses and prevent future recurrences of the same misconduct.

99.     No excuse or justification existed for PECO to subject Plaintiff to penalties when PECO's own records for the service were incomplete and negligently maintained, and no excuse or justification existed for the PUC to continually defer to PECO by overlooking PECO's inability to establish proof that the recertification requirement promoted electrical safety and PECO's refusal to incorporate an exemption for similar properties in light of admitted ambiguities in the plain language of and PECO's past malfeasance in implementing the current version of the tariff.

100.     With malevolent disinterest Defendants nevertheless subjected Plaintiff to financial losses, exposed Plaintiff to potential criminal and civil liability and potential tenant lawsuits even though aware Plaintiffs never knowingly violated PECO's tariff.

101.     It is believed and therefore averred that PECO acted solely and maliciously to profit at Plaintiffs' expense.

102.     At all relevant times, Defendant PUC had a heightened if not fiduciary duty not to deprive Plaintiffs of their interests in their property.

103.     At all relevant times, the PUC exceeded its authority and jurisdiction and with malevolent disinterest did the opposite of assisting

Plaintiffs in obtaining a neutral determination of the issues relating to PECO's exercise of quasi-governmental authority despite that PECO is a for-profit business and a purely commercial enterprise.

104.    At all relevant times, the PUC exceeded its delegated discretion to endorse and facilitate the private company's (PECO's) in acting with the impunity of a public entity and governmental actor and in concert with other private companies.

105.    At all relevant times, Defendants were aware Plaintiffs' private leases would be interfered with by PECO's tariff and Plaintiffs would be subject to possible criminal and/or civil liability for endangering tenants. [EX. "A" P19]

106.    As pled throughout the Fourth Amended Complaint Defendants, with actual malice, unjustifiably sanctioned Plaintiffs in connection with tariff enforcement, causing Plaintiffs' shock, anxiety, loss of consortium and emotional and physical distress. [EX. E]

107.    It is believed and therefore averred that PECO's malicious conduct surrounding the enforcement of its recertification rule has deprived Hatchigian and the proposed Class of rents due and owing and forced them to re-let their premises at a lower market rental rate, depriving them of future rental income for the same residential properties.

108.     Accordingly, Plaintiffs seeks special damages for present and future unpaid and lost rental income, medical expenses in connection with tenant injuries arising from the herein alleged conduct by PECO, and punitive damages against all Defendants jointly and severally.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF THE UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
## (Against Defendant PECO)

109.     The above allegations are incorporated by reference.

110.     This count seeks damages and injunctive relief pursuant to federal law and pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1 et seq. ("UTPCPL")

111.     Defendants' conduct described above and throughout this Complaint constitutes unfair methods of competition or unfair or deceptive acts or practices in violation of the UTPCPL.

112.     Specifically, 73 P.S. §201-2(4) finds that the following are included in the definition of "unfair or deceptive acts or practices":

113.     By acting like an immune governmental entity, PECO

a)     caused the likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of services in violation of Section 201-2(4)(ii),

b)     caused the likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another in violation of Section 201-2(4)(iii),

32

c)    used deceptive representations or designations of geographic origin in connection with services in violation of Section 201-2(4)(iv),

d)    represented that services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have in violation of Section 201-2(4)(v),

e)    represented that services are of a particular standard, quality or grade, in violation of Section 201-2(4)(vii)

f)    advertised services with intent not to sell them as advertised in violation of Section 201-2(4)(ix)

g)    advertised services with intent not to supply reasonably expectable public demand as defined in Section 201-2(4)(x)

108.    Additionally, Defendant PECO has otherwise engaged in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding, as defined in Section 201-2(4)(xxi)

109.    Defendant PECO failed to comply with its duties to Plaintiffs when contracting to provide the alleged electricity services and thereafter

110.    Defendant PECO unilaterally decided but did not disclose that notice would be only selectively and intermittently provided, violating the guaranty of safe electrification.

111.    Discovery may show Defendant PECO also mischaracterized Plaintiffs' legal rights in violation of §201-2(4)(xiv) as Class members did not know they could cancel the Services Agreement and assumed they had no ability to locate comparable alternative providers

within the City of Philadelphia . See power shopper published by PECO @

https://www.papowerswitch.com/

112.    Wherefore, Plaintiffs seeks damages for this Count as available under the statute.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF THE PENNSYLVANIA CONSTITUTION

113.    Section 9.2 regulates residential rental properties. It became effective on 2017 and provides that "The Company reserves the right to refuse the introduction of service unless a written certificate of approval, satisfactory to the Company, has been received from a competent inspection agency authorized to perform this service in the specific locality in which service is to be provided"

114.    Defendants' implementation of Section 9.2 violates substantive due process rights under Article I, Section 1, of the Pennsylvania Constitution.

115.    The certification requirement violates substantive due process.

116.    The lack of notice of shutoffs violates substantive due process.

117.    The PUC should have directed PECO to strike or amend provisions of §9.2 that the court deemed ambiguous and/or that imposed obligations on owners and landlords inconsistent with existing Pennsylvania law.

## NINTH CAUSE OF ACTION
## NEGLIGENT/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

118.    The above allegations are incorporated by reference.

119.    In connection with the enforcement of PECO Electric Tariff § 9.2, with actual malice, PECO and the PUC unjustifiably sanctioned Plaintiffs, causing Plaintiffs shock, anxiety, loss of consortium and emotional and physical distress. The burden to comply with PECO's failure to provide consistent Shut-off Notifications to Occupants/Tenants coupled with Section 9.2's mandating of underwriter certification undermines the ability of Class Members to meet their other compliance duties and their obligations to the community.  Pursuant to Philadelphia Codes and City regulations, the rental units must also be licensed, maintained, and registered, and are subject to inspection by the City; these codes and regulations create specific owner and landlord duties which the Class Members are subject to and provide for sanctions and/or fines that may be levied against owners, landlords and tenants for violations of their

provisions and for disciplinary action against them in the form of warnings, non-renewal, suspension, or revocation of the rental license.  Wherefore, Plaintiffs and the Class seek to recover damages for the intentional infliction of emotional distress, to be determined at trial.

## TENTH CAUSE OF ACTION
## BREACH OF CONTRACT
## (Against Defendant PECO)

120.    The above allegations are incorporated by reference.

121.    Plaintiffs and the Proposed Class Members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

122.    Defendant PECO entered valid, enforceable contracts with Plaintiff and the Proposed Class Members.  ("Service Agreement")

123.    According to the terms of PECO's Service Agreement, Plaintiffs and the other Class members were caused to reasonably believe that termination of the electricity sold by Defendant would not be randomly terminated without notice.

124.    By terminating the promised services without warning or notice and despite timely payment for service, Defendant PECO materially breached the Services Agreement.

125.    Defendant PECO created in Plaintiffs and the Proposed Class Members the reasonable contractual expectation PECO would implement reasonable reconnection procedures that would not create protracted periods without power in the leased properties. Instead, PECO's reconnection procedures require redundant third party underwriter certification at the property owner's expense placing a greater financial burden on Class member without the ability to cancel.  PECO has failed to satisfy its obligation to provide continuity of electrical service to customers whose accounts are paid and up to date. Plaintiffs and the Class have performed all material obligations imposed on them in the Service Agreement, however Defendant has failed to perform its duties under the Service Agreement.

126.    Defendant's breach of its contractual duties and failure to maintain continuous electrification to the properties has caused damages to the Class including, without limitation, un-reimbursed overpayments not owed to PECO, utilities paid for but not provided,  lost rental income, diminution of market value,  sums paid to repair and restore habitability to the rental properties and to compensate evicted tenant occupants, emotional distress and humiliation as a consequence of PECO's breach,

along with  reasonable legal costs, and other such relief as the Court
deems appropriate.

127.    In addition, every contractual arrangement inherently
carries with it a covenant of good faith and fair dealing.  Under this
covenant, the court is not to assume that one party is at the mercy of the
other but will read in any necessary conditions to ensure a mutuality of
obligation under fair terms: Whereas PECO represents that electricity
service to customers with accounts in good standing will not be terminated
without notice, on average, Defendant provides zero notice or late and
unreliable notice, with no hearing procedure in place prior to service
termination.   Instead of implementing shutoff and re-energization
consistent with a competitive retail electricity market, PECO has
aggregated the entities in the market [See PECO @
https://www.papowerswitch.com/  while imposing exorbitant and
unreasonable mandatory compliance burdens on customers, including
Members of the Class, as if PECO were an arm of municipal government.

128.    The Defendants were entrusted by Plaintiff and the
Proposed Class Members to provide continuity of safe service to paying
customers whose accounts were current and up to date and relied upon by
the Class members to construe and implement tariffs filed by PECO

reasonably and in a manner that would not deny their constitutional rights. PECO have added new compliance costs on top of existing compliance burdens despite having established the reasonable expectation that Defendant would employ experts with knowledge of safe electrification before demanding recertification of hazard-free properties.

129.    The Class Members reasonably expected that PECO would use reasonable notice and hearing procedures prior to terminating their services.  PECO's imposition of unreasonable and exorbitant costs on top of the contract amount have no relation to tenant health and safety, violated the company's constructive representation that services paid for would be continuous, and constituted a breach of the implied covenant of good faith and fair dealing, caused Plaintiffs and Class Members to suffer additional actual and ascertainable losses.

## ELEVENTH CAUSE OF ACTION
## FOR A DECLARATORY JUDGMENT

130.    The above allegations are incorporated by reference.

131.    The fact that Defendant PECO is a nongovernmental for-profit entity seeking a reputation as an ethical company with the highest safety standards would not mean that PECO should be protected by the privileges and immunities of a state actor while escaping the regulations that public utilities are subject to.

132.     Defendant PUC provides a pro forma process for owner complaints in the form of "adjudicative" review of PECO's re-certification and shutoff procedures, while ultimately rubberstamping PECO's enforcement practices in disregard of evidence that should have triggered tariff amendment in Hatchigian's case.

133.     Wherefore, Plaintiffs seek a declaration  that :

a)     Defendant's PECO's implementation of PECO Electric Tariff § 9.2's  recertification requirement is in violation of the Constitutional requirements of Procedural and Substantive Due Process, and requiring Defendants to cease and desist further implementation thereof.

b)     Defendant PECO must negotiate a) an amendment to Section 9.2 and related provisions in lieu of mandatory recertification and termination of service and b) a notice requirement for service shut offs , and requiring the PUC to exercise jurisdiction over that negotiation.

## TWELFTH CAUSE OF ACTION
## FOR PUNITIVE DAMAGES

134.     The above allegations are incorporated by reference.

135.     Plaintiffs seek punitive damages pursuant to Defendants' acts based on actual malice.

## THIRTEENTH CAUSE OF ACTION

## NEGLIGENCE

136.    The above allegations are incorporated by reference

137.    Commission endorsement of the tariff in complaints brought before it does not absolve PECO from all liability for unlawful service interruptions or unreasonably protracted termination and reactivation procedures.

138.    Defendants have negligently failed to utilize available procedures to provide the Plaintiff and the Class with continuity of electric service, resulting in damage to Plaintiff and the Class.

139.    Defendants owed Plaintiff and the Class Members a legal duty to refrain from terminating their residential electrical service without warning despite timely payment, a duty which was in effect regardless of the reasons for termination.

140.    Defendants breached their legal duties to Plaintiffs and the Class Members by instituting shut off procedures in the absence of any advance notice or neutral hearing.

141.    In addition, Defendants owed Plaintiffs and the Class Members a legal duty to reconnection within a reasonable period, which was breached when PECO refused to restore power and prolonged the discontinuity in service through its inadequate reconnection policies.

142.    PECO's unexplained failure to utilize available alternative means of providing advance notice of termination and post-termination reintroduction of utility service to non-delinquent customers in the event of service interruptions is not excused because the commission finds the tariff "reasonable per se" for its stated purpose.

143.    Specifically, Pennsylvania's approval of a tariff filed by a private utility are insufficient basis for implying an automatic exemption from the company's liability for the negligent failure to give notice and a hearing prior to terminating service and the failure to enforce reasonable predicates for having power reintroduced to Plaintiffs' residences.

144.    Neither § 9.2 nor its enabling legislation absolve PECO of all liability for the failure to reconnect service upon the landlord's or tenant's compliance with the "no hazardous condition" six (6)-month discontinuity criteria.

145.    The breach of the above duties constitutes negligence on the part of PECO and Exelon.

146.    The measures taken by Plaintiffs were a probable outcome known to PECO and Exelon when it enacted § 9.2.

147.    Defendants knew or should have known that Plaintiffs and the Class Members would reasonably believe that testing and verifying

42

household wiring as being sound using standard methods recognized in the electrical contracting industry was sufficient to comply with Tariff 9.2 and reintroduce electrical power after their power was wrongfully terminated.

148.    Defendants had a duty to exercise reasonable care in all procedures relating to the termination of electrical power to prevent foreseeable harm, including harm to Plaintiffs and the Class Members that might arise as the consequence of sudden shut offs.

149.    Defendants' violation of state law was a proximate cause of Plaintiffs' injuries as set forth herein

150.    Wherefore, the Plaintiffs demand judgment in their favor, against Defendant PECO and Defendant Exelon for damages within the jurisdiction of this Court, in the amount of Fifty Thousand Dollars ($50,000.00) per Class Member.   The Plaintiffs reserve on moving for attorney's fees and/or costs in relation to their Negligence claim.

## FOURTEENTH CAUSE OF ACTION
## FOR ATTORNEY'S FEES

151.    Plaintiffs hereby request an award of attorney's fees and costs available to them, including fees available to Plaintiffs and the proposed Class pursuant to 42 U.S. Code § 1988, including the non-lawyer/pro se equivalent of attorney's fees.

43

# **PRAYER FOR RELIEF**

**WHEREFORE**, for the reasons cited hereinabove, Plaintiff Class Members respectfully request that this Honorable Court issue an Order: **FOR SUM CERTAIN OF ONE MILLION DOLLARS ($1,000,000)**

(a)   Certifying the proposed class and/or sub-classes herein under Federal Rule 23, and appointing David Hatchigian as lead Plaintiff Hatchigian to acquire counsel to represent same;

(b)   Granting monetary damages in the amount of Fifty Thousand Dollars ($50,000.00) per Class Member.

(c)   Directing PECO to negotiate a) an amendment to Section 9.2 and related provisions in lieu of mandatory recertification and termination of service and b) a notice requirement for service shut offs and ordering that the PUC shall exercise jurisdiction over that negotiation;

(d)   Granting legal fees, expenses and costs, pursuant to 42 U.S.C. § 1988, including the non-attorney pro se litigant equivalent of attorney's fees; and

(e)   Awarding such other relief deemed by the Court to necessary or appropriate.

152.    Plaintiffs additionally seek a Declaration that Defendant's
PECO's implementation of PECO Electric Tariff § 9.2's  recertification
requirement is in violation of the Constitutional requirements of Procedural
and Substantive Due Process and requiring Defendants to cease and
desist further implementation thereof.

**RESPECTFULLY SUBMITTED;**

*David Hatchigian*

**Plaintiff Pro Se**

**MAY 16, 2022**

## VERIFICATION

**I** David Hatchigian, plaintiff, verify that the facts set forth in the

foregoing are true and correct to the best of my information, knowledge, and

belief.

I understand that the statements contained herein are subject to the

Penalties of 18 Pa. C.S.A., §4909 relating to unsworn falsification to

authorities.

*David Hatchigian*

David Hatchigian

May 16, 2022,

## **CERTIFICATION OF SERVICE**

I, DAVID HATCHIGIAN, CERTFY THAT I HAVE SERVED

DEFENDANTS WITH MY  FEDERAL COMPLAINT WITH

EXHIBITS  DATED MAY  16, 2022   ON OR ABOUT MAY 17, 2022,

 BY COMMONWEALTH PROCESS SERVER TO THE FOLLOWING

DEFENDANTS

 RESPECTFULLY,

*David Hatchigian*

DAVID HATCHIGIAN

CC: MS. LYNN R. ZACK ESQUIRE
PECO ENERGY CO.
2301 MARKET STREET S23-1
PHILADELPHIA PA. 19103
215-841-6816 / FAX 215-841-4474

MS. WINETT C. HEATHER ESQUIRE
1515 MARKET STREET SUITE 1200
PHILADELPHIA PA. 19102-1932
215-837-1932 / FAX 215-592-0792