IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID HATCHIGIAN, et al., | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| PECO/EXELON, et al., | : | NO. 22-cv-02170 |
| *Defendants.* | : | |
| | : | |

MEMORANDUM

KENNEY, J.                                                                                July 12, 2023

### I. INTRODUCTION

Plaintiff David Hatchigian ("Hatchigian"), along with several named and unnamed plaintiffs ("Non-Hatchigian Plaintiffs"), bring suit against: (i) PECO Energy Company ("PECO") and Exelon Corporation ("Exelon") (collectively, "PECO Defendants"); (ii) the Pennsylvania Public Utility Commission ("PUC"), Commissioner Gladys Brown Dutrieuille, Commissioner John F. Coleman, Jr, and Commissioner Ralph V. Yanora in their official capacities (collectively "PUC Defendants"); and (iii) the Municipal Inspection Corporation ("MIC"). Presently before the Court are fully briefed Motions to Dismiss filed on behalf of all named Defendants. ECF Nos. 48, 49, 58. For the reasons set forth below, the Court will grant all three Motions and dismiss this case with prejudice as to Plaintiff Hatchigian. An appropriate Order follows.

### II. BACKGROUND & PROCEDURAL HISTORY

This action represents Hatchigian's fourth attempt to litigate the same underlying dispute and all parties are familiar with the relevant facts. Accordingly, the Court sets forth only the most relevant factual and procedural information here and, for clarity, incorporates facts as summarized

1

by the Superior Court of Pennsylvania and the PUC's Opinion and Order attached to the Amended Complaint ("PUC Op."). ECF No. 43-1.

Hatchigian owns and rents a two-story, multi-family house in Philadelphia. ECF No. 41 ¶ 14. In 2016, Hatchigian received complaints from tenants that their electrical service had been shut off. *Hatchigian v. PECO/Exelon*, No. 142 EDA 2018, 2019 WL 3628744, at *2 (Pa. Super. Aug. 6, 2019). In order to restore electricity to the property, PECO required that Hatchigian obtain an underwriter's certificate as was purportedly required by PECO policy. *Id.* Hatchigian contended that, despite following all instructions by PECO, the electricity was not restored and, as a result, his tenants were unable to move into the apartment on time. *Id.*

Hatchigian then filed a complaint against PECO in the Philadelphia Court of Common Pleas because of PECO's refusal to reconnect electricity to his property. *Hatchigian v. PECO*, August Term 2016 No. 65 (Phila. C.C.P.). The trial court dismissed Hatchigian's fourth amended complaint in this case, but the Superior Court reversed, finding that the PUC had primary jurisdiction over Hatchigian's complaint rather than the Court of Common Pleas. *Hatchigian v. PECO/Exelon*, No. 142 EDA 2018, 2019 WL 3628744, at *1. The Superior Court vacated and remanded with instructions to proceed accordingly. *Id.*

Hatchigian's case was not transferred to the PUC. Instead, Hatchigian filed a *new* complaint with the PUC against PECO in 2020. PUC Op. at 3. An administrative law judge determined that the PECO policy at issue was reasonable, but that it had been misapplied to Hatchigian's tenants. *Id.* at 16–18. PECO filed exceptions to this determination with the PUC and, on April 14, 2022, Commissioners Dutrieuille, Coleman, and Yanora (all Defendants here) reversed in part, finding both that the PECO policy was reasonable and that it had been properly applied. *Id.* at 35. Hatchigian did not appeal this determination to the Commonwealth Court.

Instead, on May 16, 2022, Hatchigian commenced the instant federal action, and he subsequently filed an Amended Complaint on October 10, 2022. ECF Nos. 1, 41. In the Amended Complaint, Hatchigian purports to assert a class action on behalf of both named and unnamed Plaintiffs. ECF No. 41 at 16. Additionally, in the Amended Complaint, Plaintiff asserts fifteen causes of action against Defendants. All named Defendants have now moved to dismiss for lack of subject matter jurisdiction or for failure to state a claim, and Hatchigian has responded in opposition to each. ECF Nos. 48, 49, 55, 56, 58, 61.

### III. STANDARD OF REVIEW

When a Rule 12(b)(1) motion is filed prior to an answer, it is "considered a facial challenge to jurisdiction." *Hendrick v. Aramark Corp.*, 263 F.Supp.3d 514, 517 (E.D. Pa. 2017) (citing *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014)). "When considering such a facial challenge, a court must apply the same standard of review that would apply on a motion to dismiss under Rule 12(b)(6)." *Id.* Accordingly, "well-pleaded factual allegations are taken as true, and reasonable inferences are drawn in the plaintiff's favor." *Id.* Dismissal under a facial challenge is proper for claims that "clearly appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction" or are "wholly insubstantial and frivolous." *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408–09 (3d Cir. 1991) (quoting *Bell v. Hood,* 327 U.S. 678, 682 (1946)).

To survive a motion to dismiss for failure to state a claim, the complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when the plaintiff pleads factual contention that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts are required to

"accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). However, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The *pro se* litigant's complaint is "to be liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).; *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). However, *pro se* plaintiffs still must meet a minimum standard by "alleg[ing] sufficient facts in their complaint to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). In other words, "[w]hile Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,' the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555–56). A complaint will not survive if it contains merely "an unadorned, the defendant-unlawfully-harmed-me accusation" or "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

In accordance with this standard, the Third Circuit requires the application of a three-step analysis in assessing a 12(b)(6) motion. First, courts "must 'tak[e] note of the elements [that the] plaintiff must plead to state a claim;'" second courts "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;' " and, third "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675). The Court permits "a

4

curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245.

## IV. DISCUSSION

For the reasons set forth below, the Court finds dismissal appropriate as to all counts.

### A. The Non-Hatchigian Plaintiffs Shall Be Stricken

Federal Rule of Civil Procedure 11(a) ("Rule 11(a)") provides that "[e]very pleading, written motion, and other paper must be signed . . . by a party *personally* if the party is unrepresented" and that "[t]he paper must state the signer's address, e-mail address, and telephone number." Fed. R. Civ. P. 11(a) (emphasis added). Though an individual may proceed *pro se* in federal court, such individuals may only represent themselves—as a non-attorney, they cannot represent the interests of others. *Murray v. City of Phila.*, 901 F.3d 169, 170–71 (3d Cir. 2018).

In the present matter, although there are 18 *pro se* Plaintiffs (and 20 John Doe Plaintiffs) named in the Complaint, the only Plaintiff who personally signed the Complaint and provided the information required by Rule 11(a) is Plaintiff Hatchigian.[1] Though Hatchigian may submit an e-signature on his own behalf when filing electronically from his own e-mail account, Hatchigian is not an attorney and may not sign on behalf of the other *pro se*[2] Plaintiffs. Moreover, the pleadings do not contain any facts related to these *pro se* Plaintiffs indicating that they have standing in this matter or that their rights are implicated here. Finally, Hatchigian's filings omit any contact information as to the other *pro se* Plaintiffs as required by Rule 11(a).

---

[1] The Court also notes that there is no indication that the Non-Hatchigian *pro se* Plaintiffs are even aware that they are named Plaintiffs in this lawsuit.
[2] *Pro se* means to appear for oneself, and a non-attorney may not appear on another person's behalf in the other's cause of action. Additionally, the Court notes that the Amended Complaint contains (what purport to be) e-signatures for only eight of the seventeen Non-Hatchigian Plaintiffs (and do not contain the appropriate contact information for any). Finally, because Plaintiff's Amended Complaint fails on its face, the fact that he purports to bring a class action does not cure the deficiencies under Rule 11.

Rule 11(a) requires that "[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the . . . party's attention." *Id.* The violation of Rule 11(a) was first raised on July 11, 2022 in PECO Defendants' first motion to dismiss and has been raised many times since. *See, e.g.*, ECF No. 12. No curative action was taken, despite the passage of a full year and notwithstanding Hatchigian's self-identified role as the "representative" of these *pro se* Plaintiffs. Further, as none of the Non-Hatchigian Plaintiffs provided any contact information in the Amended Complaint, the Court is unable to notice such individuals regarding their failure to comply with Rule 11(a). Accordingly, because of Non-Hatchigian Plaintiffs' failure to comply with Rule 11(a), the Court will strike the Amended Complaint as to all Non-Hatchigian Plaintiffs and dismiss without prejudice as to these *pro se* parties only.

### B. Hatchigian's Claim Against MIC Must Be Dismissed

The claim asserted against MIC under 42 U.S.C. § 1985 for conspiracy to deny civil rights (Count IV) must be dismissed. As a threshold matter, the Court does not have subject matter jurisdiction because this claim is "insubstantial on [its] face." *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 898 (3d Cir. 1987). Indeed, Hatchigian asserts only a conclusory statement that MIC (along with the other Defendants) conspired to deny some undefined rights due to Hatchigian and other landlords or property owners; the Amended Complaint is entirely devoid of any factual allegations as to MIC.[3] Plainly, Hatchigian's lone claim against MIC is

---

[3] Additionally, because the Amended Complaint is entirely devoid of factual allegations as to MIC, dismissal is required under Rule 12(b)(6). Because Hatchigian asserts a claim under Section 1985, he must allege facts sufficient to support: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quotes omitted). Moreover, Sections 1985(2) and 1985(3), which Hatchigian relies upon, apply "only where a conspiracy involves racial or otherwise class-based invidiously discriminatory animus." *Steinhardt v. Bernardsville Police Dep't*, 2021 WL 3929321, at *3 (3d Cir. Sept. 2, 2021). Hatchigian's pleadings (which merely recite the elements of the claims asserted) fall far short of these requirements because they make no factual allegations regarding this race- or class-based animus, the "meeting of the minds" asserted, or actions taken in furtherance of the conspiracy.

"wholly insubstantial and frivolous" and must be dismissed for lack of subject matter jurisdiction. *Kehr Packages, Inc.,* 926 F.2d at 1408–09 (3d Cir. 1991) (quoting *Bell* 327 U.S. at 682).

### C. Hatchigian's Claims against PECO Defendants Must Be Dismissed
#### 1. Civil Rights Claims Under 42 U.S.C. § 1983 (Counts I & II)

"Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory....'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *see also* 42 U.S.C. § 1983. Section 1983 affords no substantive rights, rather, it enables a plaintiff to bring a federal claim against government officials or those acting under color of state law. Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Coward v. City of Phila.*, 546 F.Supp.3d 331, 333 (E.D. Pa. 2021) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). However, when the defendant is a private party, Section 1983 applies only where there is a "sufficiently close nexus" between the private party's actions and the state to warrant treating them as state actions. *Munox v. City of Union City*, 481 Fed. App'x. 754, 761 (3d Cir. 2012). This may be shown where: (1) the private party performs a function typically performed by the State; (2) the private party acted in concert with the state; or (3) the state has become interdependent with the private party. *See Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).

In *Jackson v. Metropolitan Edison Co.*, the Supreme Court considered whether there was a sufficiently close nexus between the State and a private utility company's decision to discontinue services to give rise to a claim under Section 1983. 419 U.S. 345 (1974). Even where the private

7

utility company had a monopoly, was strictly regulated, and provided an essential public service (electricity), the Court found state action lacking. *Id.* The same result must be reached here; because both PECO and Exelon are privately owned and operated, Hatchigian cannot assert a claim under Section 1983 against the PECO Defendants. *Zapata v. PECO*, 712 Fed. App'x 216, 217–18 (3d Cir. 2018). Counts I and II must therefore be dismissed as to PECO Defendants.

### 2. Civil Rights Claims Under 42 U.S.C. § 1985 (Counts III & IV)

As to both Conspiracy claims asserted by Hatchigian against PECO, the Amended Complaint must allege facts sufficient to support: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quotes omitted). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Gochin v. Markowitz*, No. 18-cv-3348, 2018 WL 4361574, at *6 (E.D. Pa. Sept. 13, 2018) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).

Other deficiencies notwithstanding,[4] Hatchigian fails on the first prong. Indeed, the Amended Complaint does not contain any factual allegations that support even an inference of the requisite conspiratorial agreement between PECO and others (such as the PUC). Instead, Hatchigian pleads only conclusory statements that such a conspiracy or agreement existed, but the Amended Complaint is devoid of any supporting factual allegations. Simply, there are no factual allegations from which the Court can reasonably infer that there was a meeting of the minds

---

[4] As described above, Hatchigian also fails to allege race- or class-based animus to support his claims under Sections 1985(2) and 1985(3).

between any Defendants that would give rise to a conspiracy claim. Because he has failed to sufficiently allege a conspiracy, both claims asserted against PECO Defendants under Section 1985 (Counts III and IV) must be dismissed.

### D. Hatchigian's Claims Against the PUC Defendants Must Be Dismissed

#### 1. Eleventh Amendment Immunity

To begin, the PUC Defendants assume, without discussion, that they are entitled to Eleventh Amendment Immunity as to all claims. However, whether PUC operates as an arm of the state for sovereign immunity purposes remains unsettled. *Compare, e.g.*, *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n*, 141 F.3d 88, 92 n.4 (3d Cir. 1998) (noting that the appellant did "not take issue with" the determination that the PUC was an arm of the state; subsequently holding that Congress abrogated sovereign immunity), and *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 508-13 (3d Cir. 2001) (holding that the Commonwealth waived sovereign immunity), *with Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 1997 WL 597963, at *10 (E.D. Pa. Sept. 15, 1997) (holding that the PUC is not an arm of the state for sovereign immunity purposes), and *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 342 F.3d 242, 252-53 (3d Cir. 2003) (affirming the District Court's determination in *Nat'l R.R. Passenger Corp.* that PUC was estopped from raising the sovereign immunity defense in collateral proceedings, but without addressing whether PUC was indeed an arm of the state). To determine whether an entity is "an arm of the state" for Eleventh Amendment purposes, the Court must consider: "(1) whether, in the event the plaintiff prevails, the payment of the judgment would come from the state . . .; (2) the status of the agency under state law . . .; and (3) what degree of autonomy the agency enjoys." *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995). The PUC Defendants do not brief these factors.

Accordingly, the Court declines to speculate as to each and will not dismiss the claims against PUC Defendants on this basis.

### 2. Individual PUC Defendants

However, the individual PUC Defendants (Commissioners Dutrieuille, Coleman, and Yanora) are entitled to the "[q]uasi-judicial immunity [that] attaches to public officials whose roles are functionally comparable to that of a judge." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (cleaned up). Judicial immunity for agency decisions is "necessary to ensure that agency adjudicatory decisions will be rendered independently, free from external pressures, harassment or intimidation." *Petition of Dwyer*, 406 A.2d 1355, 1359 (Pa. 1979). Here, a Pennsylvania Court determined that the PUC was the appropriate adjudicative body over Hatchigian's state court claims. Such a finding transferred what would ordinarily be the role of a state judge to the PUC's administrative judges and commissioners. Indeed, Hatchigian filed a complaint, received a decision, and appealed to the individual PUC Defendants who provided their reasoning in a subsequent, written opinion. As has been applied to the adjudicative bodies of other administrative agencies, the PUC Commissioners are entitled to quasi-judicial immunity and Hatchigian's claims against such Defendants must be dismissed.[5]

### 3. The PUC as an Entity

Construing his Amended Complaint liberally, Hatchigian brings claims against the PUC under 42 U.S.C. § 1983 (Count II) and 42 U.S.C. § 1985 (Counts III and IV). The violation of federal law asserted in Count II is "abuse of process." A § 1983 claim for abuse of process "lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989). As to the PUC,

---

[5] This quasi-judicial immunity may also extend to the PUC as an entity. However, even if it does not, dismissal would still be appropriate for the reasons set forth below.

Hatchigian summarily asserts that the PUC "relied on unsubstantiated facts, disregard[ed] exculpatory information, and issu[ed] results-oriented and automatic rulings out of deference to [PECO]" to "target[] property owners and landlords for the purpose of extortion, intimidation, harassment, and tortious interference with their lease agreements." ECF No. 41 at 20. The ulterior motive asserted—to extort landlords or protect PECO—is wholly unsubstantiated by the facts alleged. Without more specificity, these allegations do not raise Hatchigian's right to relief over the speculative level. Indeed, Count II is supported only by "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. Count II must therefore be dismissed under Rule 12(b)(6). As to both conspiracy claims (Counts III and IV), the Amended Complaint fails to allege a conspiratorial agreement between the PUC and PECO (described above) and must also be dismissed.

### E. Hatchigian's State Law Claims

Having dismissed all outstanding federal claims, the Court will decline to exercise supplemental jurisdiction over Hatchigian's state law claims. A court "may decline to exercise supplemental jurisdiction [over state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right," and thus, whether or not to exercise supplemental jurisdiction once all federal claims have been dismissed is within the discretion of the district court. *Hall-Wadley v. Maint. Dep't*, 386 F.Supp.3d 512, 519 (E.D. Pa. 2019) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "When all federal claims are eliminated before trial, 'the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7

(1988)). As discussed above, the Court will dismiss Counts I through V as to all Defendants.[6] Accordingly, the only possibly remaining claims (to the extent dismissal is not otherwise required for a reason set forth above) are those rooted in state law. Because this case has not progressed past the motion to dismiss stage, the Court finds it appropriate to exercise its discretion and dismiss the remaining state law claims.

V. **CONCLUSION**

For the foregoing reasons, the Amended Complaint will be dismissed. Hatchigian's dismissal shall be with prejudice because any amendment would be futile, while the Non-Hatchigian Plaintiffs' dismissal shall be without prejudice.

**BY THE COURT:**

**/s/ Chad F. Kenney**

_____

**CHAD F. KENNEY, J.**

---

[6] Plaintiff also brings this action against Unidentified Doe Defendants. However, the Amended Complaint does not contain a single factual allegation regarding these Defendants. Accordingly, Hatchigian has failed to state a claim against the Unidentified Doe Defendants and dismissal is appropriate.